UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH F. F. DRAKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:13-cv-1899-SEB-DML |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Motion to Dismiss and Motion for Summary Judgment**

In this action, plaintiff Joseph Drake asserts that the United States is liable to him for money damages because Drake received insulin therapy even though he never signed a consent form for this treatment as required by Bureau of Prisons ("BOP") policy. In addition, Drake asserts that he went into "severe hypolucemia shock (diabetes coma)" on June 4, 2012, and June 5, 2012, and that he suffered severe symptoms thereafter for a period of approximately two weeks. Drake's claims are brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. (FTCA).

The United States of America seeks dismissal of any claim based upon an alleged violation of Bureau of Prisons (BOP) Policies. The United States also argues that it is entitled judgment as a matter of law on any claim based upon medical malpractice because Drake cannot establish the elements of a medical malpractice tort claim under Indiana law.

For the reasons explained below, the United States' Motion to Dismiss and Motion for Summary Judgment [dkt. 27] are **granted.**

**I. Federal Tort Claims Act**

1

The claims in this action are brought pursuant to the FTCA. The FTCA is a limited waiver of sovereign immunity that subjects the federal government to liability for certain torts committed by federal employees acting within the scope of their employment. 28 U.S.C. §§ 2671-2680; *United States v. Orleans*, 425 U.S. 807 (1976). The wavier of sovereign immunity set out in the FTCA is contained in 28 U.S.C. § 1346(b)(1), which states:

> . . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Because the FTCA has waived sovereign immunity only where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place* where the act or omission occurred there is no liability unless there is a state law tort duty which would run from a private citizen to the plaintiff. *See Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151 (D.C. Cir. 1985).

## II.  MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of complaints that state no actionable claim. The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. When evaluating a motion to dismiss the court "takes all well-pleaded allegations of the complaint as true and views them in the light most favorable to the plaintiff." *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010).

In this action, Drake alleges there was a violation of "BOP Medical Health Service Policy." The United States argues that to the extent Drake is asserting a claim based upon a violation of

BOP policy his claim must be dismissed as it fails to state a claim. Specifically, under the FTCA, the requisite state law duty cannot be derived from an asserted violation of a federal statute or regulation. The claim must be based on a state law tort duty. *See Art Metal-U.S.A.,* 753 F.2d at 1151. In response, Drake affirms that he is alleging a state law malpractice and asserts (for the first time) that providing him with insulin without his consent amounts to an assault or battery under state law. Drake disputes that his claims are based solely on BOP policy.

Accordingly, the motion to dismiss [dkt. 27] is **granted** as to the claim that the defendants' failed to follow BOP policy.

### III.  SUMMARY JUDGMENT

The United States seeks judgment as a matter of law as to the remaining claims in this action.

**A. Standard of Review**

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party."

*Celotex,* 477 U.S. at 330. Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). This Court is not required to "wade through . . . legal argument in search of a genuinely disputed fact." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir.2000). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003).

**B. Material Facts**

On December 9, 2011, Drake was seen in Health Services for his monthly diabetic chronic care evaluation. Based on blood test results, Drake was counseled regarding his uncontrolled diabetes and informed of the complications which would result if his diabetes was not controlled. He was advised to undergo insulin treatment. That same day, Drake signed a form refusing treatment for his uncontrolled diabetes. While Drake initially refused insulin therapy, further discussion about treatment resulted in Drake ultimately agreeing to the insulin therapy. Drake "said 'since you want to force me' then 'it is in your hands' cause 'your [sic] the doctor' and 'doctors know best.'" Complaint ¶ 11.g. Drake then "began insulin injection treatment on a daily basis." Complaint ¶ 12. Drake accepted the insulin injections because he was not going to refuse what the doctors said. "I'm not going to refuse anything what the doctors say because they know best." Drake Dep. at page 30, line 11 to 15. Drake is not a doctor, is not a medical care provider, and has

no specialized training in medicine. Drake agrees with his medical providers recommendations for his diabetes and their diagnosis. Dkt. 39 at p. 4.

Drake was administered insulin from December 12, 2011, through June 5, 2012. During this time he reported low blood sugar and symptoms of sweating, shaking, fast heartbeat, inability to concentrate, sleepiness, headaches and weakness. On June 4 and 5, 2012, Drake experienced hypoglycemic shock.

An expert witness report authored by Dr. Steven M. Samuels, M.D., determined that the care Drake received for his diabetes was within the standard of care.[1] The doctor found that the decision to initiate insulin in December 2011, "was an appropriate and needed medical intervention. To not intervene with insulin at that point would leave the patient at obvious risk for progression of microvascular complications of his diabetes." See dkt. 28-1 at 1. "The episodes of hypoglycemia [were] a known complication of insulin administration and were treated appropriately." *Id*. at 2 (last paragraph). Drake's complaints of effects lingering after the episodes of hypoglycermia were not caused by the incidences of low blood sugar. *Id*.

While certain non-routine treatments do require a signed consent, diabetic treatment in the form of insulin therapy does not require the inmate to sign a consent form. Consent forms are required for such treatments as medications for psychological issues and vaccinations.

A patient has the right to refuse treatment, and a patient is not subject to disciplinary action of any sort for exercising his right to refuse medical treatment. Drake refused his morning insulin

---

[1] Drake argues that the medical staff's conduct fell below the standard of care because insulin injection treatment should not have been ordered when he had signed a medical refusal form. There is no evidence to support this assertion. Drake cites to Exhibit E, which is his medical treatment refusal form. DKt. 39-5. But the fact that a refusal form was signed is insufficient to call into question the expert witness's determination that the care Drake received for his diabetes was within the standard of care.

5

injections on February 3 and 4, 2012. Drake refused another medication from December 16, 2011 through December 26, 2011.

Drake was housed in the Special Housing Unit ("SHU") during the relevant times. Administration of medications, including insulin, to inmates in the SHU is accomplished by a member of medical staff going to the SHU and administering the medications. In the case of insulin injections, an inmate must put his arm through the food slot in the door, so that the staff member outside the cell can make the injection into the arm that has been extended outside the cell door. For Drake to have received his insulin injections, he would have had to willingly make his arm available for the injection through the food slot. No inmate in the SHU would be compelled to extend his arm outside the door to receive an insulin injection.

Drake's prescription for "regular insulin" or "Insulin Reg" was discontinued on June 4, 2012. Drake's prescription for Insulin NPH, or long acting insulin, was not discontinued on June 4, 2012. Drake was not administered the medication that was discontinued, regular insulin, on the morning of June 5, 2012.[2]

---

[2] Drake attempts to dispute this fact. He states that he was given both Regular Insulin and Insulin NPH. He states that he should never have been given the discontinued regular insulin on June 5, 2012. However, there is no evidence to support his assertion. He cites to his medical records at Exhibit G (dkt. 39-7). The Court was unable to find any suggestion in these medical records that Drake received regular insulin on June 5, 2012. However, these records do reflect that Drake's regular insulin was discontinued on June 4, 2012. Dkt. 39-7 at p. 7-8. In addition, Andrew William Rupska's Declaration reflects that the medical records reflect that the Drake was not administered the discontinued medication on the morning of June 5, 2012. Without evidentiary support, Drake's assertion that he was given the discontinued medication is insufficient to create a material fact in dispute.

### C. Discussion

The United States argues that summary judgment must be granted in its favor as to any claim based upon medical malpractice because Drake cannot meet his burden of establishing a duty, a breach of duty, and damages resulting therefrom. Drake opposes the United States' motion for summary judgment. First, he argues that he has established a medical malpractice claim against the United States based upon his hypoglycemic episodes. He claims that because he received insulin injections he went into severe hypoglycemic shock on June 4th and 5th, 2012. Second, Drake argues that there is a material issue in dispute regarding whether he consented to the insulin injections. Drake frames this claim as one for battery arguing that he never consented to the insulin treatment.

    1.    **Indiana Medical Malpractice Law**

In Indiana, "malpractice" means "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. "In a medical malpractice action based on ordinary negligence, the plaintiff must establish (1) a duty on the part of the defendant physician in relation to the plaintiff, (2) failure of the physician to meet the requisite standard of care, and (3) an injury to the plaintiff resulting from that failure." *Spar v. Cha*, 907 N.E.2d 974, 979 (Ind. 2009) (citations omitted). The duty of a treating physician is ordinarily to deliver medical services that meet the standard of ordinary care. *Vergara v. Doan*, 593 N.E.2d 185, 187 (Ind. 1992).

In Indiana, "except in those cases where deviation from the standard of care is a matter commonly known by lay persons, expert medical testimony is necessary to establish whether a physician has or has not complied with the standard of a reasonably prudent physician." *Culbertson*

*v. Mernitz*, 602 N.E.2d 98, 104 (Ind. App. 1991). "Cases which do not require expert testimony generally involve the physician's failure to remove surgical implements or foreign objects from the patient's body." *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind. App. 1995). *See e.g., Marquis v. Battersby*, 443 N.E.2d 1202, 1204 (Ind. App. 1982) (causation is a matter requiring expert testimony); *Kranda v. Houser-Norborg Medical Corp.*, 419 N.E.2d 1024, 1042-3 (Ind. App. 1981) (as there was no basis of common knowledge for a conclusion that the injury would occur but for an act of negligence, the court had to determine if there was expert testimony to support the conclusion). In Indiana, a physician is bound only to reasonable and ordinary skill and administering reasonable and ordinary care. Mere proof that a diagnosis is wrong or that a cure is not effective will not support a verdict. *Charles F. Broughton, D.M.D., P.C. v. Riehle*, 512 N.E.2d 1133, 1137 (Ind. App. 1987).

Drake cannot meet his burden of proof as to any claim for medical malpractice. He has disclosed no experts and he admitted in his deposition that he has no medical training. To the contrary, the United States submitted a report from Dr. Samuels (a doctor not previously involved with Drake's care) which establishes that the care provided in connection with Drake's diabetes was within the standard of care and that the incidences of hypoglycemic shock Drake experienced on June 4th and 5th, 2012, were known complications that were treated appropriately. Dr. Samuels unrefuted report establishes that there was no breach of any standard of care and no injury proximately caused by any breach of any standard of care. Without any evidence to support Drake's contentions, summary judgment in favor of the United States is warranted on the malpractice claim.

    **2.**    **Lack of Consent to Treatment**

Drake's major contention in his response in opposition to summary judgment is that without his formal consent, the insulin injections he received from December 9, 2011, through July 23, 2012, constituted a battery under Indiana law.[3] The United States argues that even under this new theory of liability, it is entitled to summary judgment because Drake's words and actions reflect that he did consent to treatment.

When there is a complete lack of consent to a harmful touching the claim may be viewed as a battery claim under Indiana law. *See Spar*, 907 N.E.2d at 979. This is understood to mean that forced medication may be understood as a battery under Indiana law. "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) (quoting Restatement (Second) of Torts § 13 (1965)). In this case, there is no dispute that BOP employees provided Drake with insulin and that on at least two occasions harm resulted, that is hypoglycemic shock. However, "the consent of a plaintiff is a complete defense in an action for battery." *Mullins,* 865 N.E.2d at 610 (citing 1 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *Harper, James and Gray on Torts* § 3.10 (3d ed. 2006)).

---

[3] Drake claim is not that there was a lack of informed consent, but that he did not consent. *See* Plaintiff's Response ¶ 13, Doc. 39 at 5 (Drake acknowledges he was "counselled regarding uncontrolled diabetes and complication [sic] it would cause to the body if not controlled and advised to undergo insulin treatment which Plaintiff refused by signing medical refusal form for insulin treatment."). "In the course of rendering professional services to a patient, a physician's acts of negligence, including acts which constitute a breach of the duties to disclose information and obtain informed consent, are malpractice." *Boruff v. Jesseph*, 576 N.E.2d 1297, 1299 (Ind. Ct. App. 1991).

The United States correctly notes that Drake has the burden of proving a lack of consent and that he cannot meet this burden. No reasonable juror could conclude that Drake did not provide his consent to receive insulin injections. The undisputed record reflects that he voluntarily presented himself for his insulin injections and accepted his insulin injections. Drake's best evidence is that he signed a refusal form, but his own statements and actions directly contradict this earlier refusal. For example, after signing that form he contradicted the written statement by saying "I'm not going to refuse anything what the doctors say because they know best." Drake Dep. at page 30, line 11 to 15. In addition, Indiana law does not require that consent be in writing. *See* Ind. Code I.C. 34-18-12-6 (this provision states "[t]his chapter does not require that a patient's consent . . . be in writing in all cases.").

Even if there was an issue as to whether Drake's statements could be understood by a reasonable person as giving consent, Drake's consent is established by his actions in connection with the injections. First, Drake had the right to refuse treatment without fear of any disciplinary action. Second, Drake had to willingly put his arm through the food slot in the door, so that the staff member outside the cell could make the insulin injection into the arm. The record reflects that Drake was not compelled to extend his arm outside the door to receive any injection. Third, Drake knew he could refuse treatment and exercised his right to refuse administration of insulin on the mornings of February 3 and 4, 2012, and refused another medication from December 16, 2011, through December 26, 2011. Under these circumstances, Drake's actions constituted consent to the injections each time he was injected and Drake cannot meet his burden of establishing that he did not consent to the insulin injections.

Finally, there is no evidence that any BOP employee intended to harm Drake by administering insulin to him as required to state a battery claim. *See Mullin*, 865 N.E.2d at 613 (defendant was entitled to summary judgment on battery claim because there was no evidence that defendant intended to cause a harmful contact).

Accordingly, the United States is entitled to judgment in its favor on Drake's battery claim.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Drake has not identified a genuine issue of material fact as to his claims in this case, and the United States is entitled to judgment as a matter of law. Therefore, the United States' Motion to Dismiss any claims based solely on BOP policy and its Motion for Summary Judgment (Dkt. 27) is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _____09/21/2015_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOSEPH F.F. DRAKE
00886-093
CANAAN U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 300
WAYMART, PA 18472

Jeffrey L. Hunter
United States Attorney's Office
Jeff.hunter@usdoj.gov